UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JESSICA V., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:22-cv-30079-KAR |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION
FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION
FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER
(Docket Nos. 19 & 22)

ROBERTSON, U.S.M.J.

Jessica V. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner denying her application for Supplemental Security Income ("SSI"). Plaintiff seeks remand based on her contention that the ALJ erred in his evaluation of a medical opinion from one of Plaintiff's medical treatment providers. Before the court are Plaintiff's motion for judgment on the pleadings (Dkt. No. 19), and the Commissioner's motion for an order affirming the decision (Dkt. No. 22). The parties have consented to this court's jurisdiction (Dkt. No. 15). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons set forth below, the court DENIES Plaintiff's motion and ALLOWS the Commissioner's motion.

I. BACKGROUND

The parties' familiarity with the 4,575-page administrative record is presumed. At issue is the ALJ's evaluation of a medical opinion from Plaintiff's primary care physician, Kathryn Jobbins, D.O., as documented on a form regarding Plaintiff's ability to do work-related activities

(A.R. 3326-3327).[1]  Dr. Jobbins opined that Plaintiff could lift and carry only ten pounds; could stand and walk only three hours in an 8-hour day; could sit only four hours in an 8-hour day; would periodically need to alternate sitting, standing, and walking to relieve discomfort and to shift at will from sitting or standing/walking; and would sometimes need to lie down at unpredictable intervals during an 8-hour working shift.  In response to the question on the form asking what "medical findings" supported these limitations, Dr. Jobbins noted SLE, neurogenic bladder, COPD/asthma overlap, venous insufficiency, chronic pelvic pain, chronic neck pain, anxiety/depression, and pulmonary embolism ("PE")/deep vein thrombosis ("DVT").  Regarding postural activities, Dr. Jobbins indicated that Plaintiff could only occasionally twist, stoop (bend), crouch, and climb stairs, and could never climb ladders due to anxiety/fear of heights.  Dr. Jobbins also opined that Plaintiff had unspecified limitations in her ability to reach and push/pull, and she identified the "medical findings" supporting these limitations as neuropathy/fibromyalgia/chronic pain.  Regarding environmental restrictions, Dr. Jobbins opined that Plaintiff would need to avoid concentrated exposure to extreme cold, extreme heat, and high humidity, and all exposure to fumes, odors, dusts, gases, perfumes, soldering fluxes, solvents/cleaners, and chemicals.  According to Dr. Jobbins, Plaintiff would occasionally need to use a cane and would miss about four days of work per month due to her medical impairments or treatment.

The ALJ found Dr. Jobbins' opinion as reflected on the form unpersuasive (A.R. 36).  He had the following to say about it:

> This opinion is not consistent with or supported by the medical
> evidence of record.  Dr. Jobbins did not cite to any specific

---

[1] All citations to "A.R." refer to the administrative record, which appears on the docket of this case as document 13.  The page numbers were assigned by the Social Security Administration ("SSA") and appear in the lower right-hand corner of each page.

> objective findings to support her opinion, and instead just listed the claimant's diagnoses. Physical examinations often showed that the claimant had normal motor strength, motion, and sensation in her extremities, with normal dexterity, and a normal unassisted gait (e.g., Ex. 10F/3; 66F/19, 39, 40; 83F/1; 90F/4; 95F/6). Dr. Jobbins did not clarify whether the cane was medically necessary or indicate that this device was prescribed. The claimants [sic] did not previously testify that she used a cane, and only recently started using a walker. Moreover, the claimant's current use of a walker appears to be based on subjective reports of weakness and there is no evidence that she will require any assistive device for at least 12 months. Therefore the undersigned finds that this opinion overstates the claimant's functional limitations

(A.R. 36-37).

## II. THE ALJ'S DECISION

On November 30, 2021, the ALJ issued a decision denying Plaintiff's claim (A.R. 16-52). The ALJ conducted the requisite five-step sequential analysis set forth in the regulations promulgated by the SSA. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At the first step, the ALJ assumed that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 5, 2017 (A.R. 24-25).[2] At the second step, he found that Plaintiff's severe impairments included neurogenic bladder, degenerative disc disease, depressive disorder, anxiety disorder, and post-traumatic stress disorder (A.R. 25). The ALJ also found that Plaintiff had multiple non-severe impairments, including asthma, migraine headaches, obesity, history of cerebrovascular accident, and past pulmonary embolism, but that systemic lupus erythematosus (SLE), fibromyalgia, and carpal tunnel syndrome were not medically determinable (A.R. 25-27). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of

---

[2] There were earnings associated with Plaintiff's social security number, but she explained that she had been a victim of identity theft (A.R. 25).

impairments that met or medically equaled the severity of a listed impairment (A.R. 28). Before proceeding to steps four and five, the ALJ found that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 416.967(b) except that the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently. She can stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. She can occasionally climb, balance, kneel, stoop, crouch, and crawl. She must avoid concentrated exposure to respiratory irritants and unprotected heights. The claimant can understand, remember, and carry out simple tasks. She can maintain concentration, persistence, and pace during typical two-hour periods of an eight-hour workday and 40-hour workweek for those tasks. She can tolerate occasional interactions with coworkers and supervisors and brief and superficial interactions with the general public. She can manage minor changes in the work routine.

(A.R. 30). At step four, the ALJ determined that Plaintiff had no past relevant work (A.R. 39). Finally, at step five, the ALJ found that Plaintiff could perform jobs found in significant numbers in the national economy taking into account Plaintiff's age, education, work experience, and RFC, and, therefore, Plaintiff was not disabled (A.R. at 39).

### III. ANALYSIS

  A. Standard of Review

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for rehearing. *See* 42 U.S.C. § 405(g). Judicial review is limited to determining "'whether the [ALJ's] final decision is supported by substantial evidence and whether the correct legal standard was used.'" *Coskery v. Berryhill*, 892 F.3d 1, 3 (1st Cir. 2018) (quoting *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001)). The court reviews questions of law *de novo*, *id.*, but "the ALJ's findings [of fact] shall be conclusive if they are supported by substantial evidence, and must be upheld 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his

conclusion,' even if the record could also justify a different conclusion." *Applebee v. Berryhill*, 744 F. App'x 6, 6 (1st Cir. 2018) (per curiam) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981)). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (quoting *Bath Iron Works Corp. v. U.S. Dep't of Labor*, 336 F.3d 51, 56 (1st Cir. 2003) (internal quotation marks omitted)). In applying the substantial evidence standard, the court must be mindful that it is the province of the ALJ, and not the courts, to determine issues of credibility, resolve conflicts in the evidence, and draw conclusions from such evidence. *See Applebee*, 744 F. App'x at 6. That said, the ALJ may not ignore evidence, misapply the law, or judge matters entrusted to experts. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

    B. <u>Evaluating Opinion Evidence</u>

To assess opinion evidence for claims filed on or after March 27, 2017, the ALJ must consider the persuasiveness of medical opinions in the case record.[3] 20 C.F.R. § 416.920c. The ALJ does not defer or give any specific evidentiary weight to any medical opinion, including those from a claimant's medical sources. 20 C.F.R. § 416.920c(a). The most important factors to be considered in assessing persuasiveness are "supportability" and "consistency." 20 C.F.R. § 416.920c(a), (b)(2). As regards supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) …, the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). In reference to consistency, "[t]he more consistent a medical opinion(s) … is

---

[3] Plaintiff applied for SSI on June 29, 2017 (A.R. 792-800).

5

with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 416.920c(c)(2). "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not … persuasive regardless of who made the medical opinion." 82 Fed. Reg. at 5854. Other factors that are weighed include the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(3)-(5). The ALJ is required to articulate how persuasive she or he found the medical opinions from each medical source together in a single analysis and must explain how she or he considered the supportability and consistency factors for each medical source's medical opinion in the decision, but is not required to explain the other factors. 20 C.F.R. § 416.920c(b)(1)-(2)

  C. <u>The ALJ's Analysis Was Supported by Substantial Evidence</u>

  Plaintiff's sole argument on appeal is that the medical evidence does not support the ALJ's conclusions regarding the medical opinion of Dr. Kathryn Jobbins, D.O., Plaintiff's primary care provider, as set forth in the form regarding Plaintiff's ability to do work-related activities. The court disagrees. The ALJ applied proper legal standards and reached a decision supported by substantial evidence in finding Dr. Jobbins' opinion unpersuasive.

  The regulations establish that the factors of supportability and consistency are the most important for an ALJ to consider in evaluating the persuasiveness of a medical opinion. 20 C.F.R. § 416.920c(a), (b)(2). Here, the ALJ found both to be lacking with respect to Dr. Jobbins' opinion, and those findings are supported by substantial evidence. The ALJ found Dr. Jobbins' opinion to be inconsistent with the medical evidence of record, insofar as "[p]hysical examinations often showed that [Plaintiff] had normal motor strength, motion, and sensation in

her extremities, with normal dexterity, and a normal unassisted gait." The ALJ identified a number of records substantiating this finding. On December 27, 2017, Plaintiff was evaluated by Anthony Roselli, M.D., and found to have a full range of motion in all extremities, normal strength and sensation, and a normal gait with no assistive devices (A.R. 1273-1274). Dr. Roselli also noted that Plaintiff was "able to dress and undress, including removal of socks and shoes and get up and down from chair, on and off exam table. [She] can make a fist, pick up coins from a flat surface, button/unbutton, zip/unzip, and tie shoes bilaterally" (A.R. 1275). On May 16, 2019, Sehar Zulfiqar, M.D., examined Plaintiff and noted that she had a normal gait and full range of motion, and Plaintiff denied any numbness, tingling, or lower extremity weakness at the time (A.R. 3219-3220). Plaintiff saw Brian Bourgeault, P.A., on September 9, 2019, and she exhibited good strength and no gait abnormality (A.R. 3199). On September 3, 2020, Plaintiff was examined by Sreyoshi F. Alam, M.D. Plaintiff reported no numbness, tingling, or motor weakness, and she was observed to have a normal gait and power of 5/5 on all extremities (A.R. 3939). Finally, on March 28, 2021, Plaintiff went to the Mercy Medical Center Emergency Department where Plaintiff's strength was noted to be 5/5 in her hands bilaterally and her upper and lower extremities (A.R. 4111). Thus, the ALJ identified ample evidence of record that was inconsistent with and did not support Dr. Jobbins' opinions regarding the severity of Plaintiff's functional limitations.

  The Commissioner points to additional records that were inconsistent with Dr. Jobbins' opinion and provide further support for the ALJ's determination. Plaintiff saw Karin G. Johnson, M.D., on September 15, 2017, and had normal muscle bulk and tone, normal range of motion, strength of 5/5 in bilateral upper and lower extremities, and a normal gait (A.R. 2200). Plaintiff was seen at the Mercy Medical Center Emergency Department on October 24, 2017,

and, upon examination, Plaintiff exhibited 5/5 muscle strength with extension and flexion of the upper and lower extremities bilaterally, strong and equal grip strength bilaterally, and normal sensation (A.R. 1393).  On November 17, 2017, Plaintiff was seen by Jay Levin, M.D., and exhibited normal sensation, 5/5 strength throughout with pain related giveaway, and a gait with normal base, stride, and arm swing (A.R. 2135-2136).  On April 2, 2018, Plaintiff presented to Baystate Medical Center General Medicine with a gait that was within normal limits (A.R. 1980).  Plaintiff was examined by Dr. Dermot Murphy, M.D., on April 9, 2018, and was reported to have normal range of motion and strength (A.R. 1965).  On April 27, 2018, Plaintiff again presented to Dr. Johnson for examination, and she had a gait with a normal base, stride, and arm swing, and normal strength and sensation (A.R. 1936).  Adam Dossaji, M.D., examined Plaintiff on March 8, 2019, and she exhibited normal movement of all extremities, normal range of motion, and normal strength and no neurological deficits (A.R. 3245).  Finally, Plaintiff was examined by Vittal R. Setru, M.D., on December 17, 2020, and had motor strength of 5/5 in all extremities, sensation intact bilaterally, and normal range of motion (A.R. 3841).

      Plaintiff does not address these records and instead directs the court's attention to two records of treatment Plaintiff received in June and July 2020, which Plaintiff says undermine the ALJ's conclusion.  On June 22, 2020, Plaintiff was seen by Kevin Groudan, M.D., for a tele-visit regarding Plaintiff's complaint of bilateral hand pain (A.R. 3583-3586).  While Plaintiff reported chronic severe pain, Dr. Groudan was unable to perform a physical exam due to the virtual nature of the appointment (A.R. 3583).  Dr. Groudan assessed fibromyalgia and recommended an in-person examination to rule out fracture from a recent fall or "autoimmune phenomenon given chronicity of her hand pain and questionable history of lupus" (A.R. 3584).  Plaintiff was seen in-person by Leah Culler Morrison, N.P., on July 17, 2020, at which time Plaintiff reported

bilateral arm weakness and pain, resulting in Plaintiff's inability to dress herself and hold objects and difficulty opening and closing her hands (A.R. 3557-3560). Examination revealed bilateral upper extremity strength of only 3/5, poor grip strength, and diminished sensation (A.R. 3557). Ms. Morrison assessed myofascial pain syndrome and bilateral arm pain (A.R. 3558).

Plaintiff's reliance on these isolated findings is unavailing. Even if the findings from this examination could support Dr. Jobbins' opinion, "the responsibility for weighing conflicting evidence … falls on the Commissioner and his designee, the ALJ," and "not … on the reviewing court." *Seavey*, 276 F.3d at 10. While Plaintiff would have preferred the ALJ to find Dr. Jobbins' opinion persuasive based on this single examination and to have assessed further physical limitations in the RFC, it is the province of the ALJ to weigh and resolve conflicts in the evidence, and, on this record, the ALJ's decision to afford greater weight to the repeated normal findings that the ALJ cited in his decision is supported by substantial evidence.

In discrediting Dr. Jobbins' opinion, the ALJ also noted that Dr. Jobbins did not support it with objective medical evidence and supporting explanations. Instead of connecting the functional limitations to specific observations or explanations, Dr. Jobbins simply included a list of diagnoses. However, a list of diagnoses alone does not provide support of the nature contemplated by the regulations. *Cormany v. Comm'r of Social Security*, Case No. 5:21-cv-933, 2022 WL 2611952, at *8 (N.D. Oh. May 20, 2022) ("[O]pinions that consist merely of checked boxes with no explanations beyond diagnoses for support have been held to be patently deficient."), *report and recommendation adopted*, 2022 WL 4115232 (Sept. 9, 2022). This conclusion is particularly apt here were Dr. Jobbins included neuropathy/fibromyalgia/chronic pain among Plaintiff's diagnoses supposedly undergirding the assessed physical limitations in Plaintiff's ability to reach and push/pull, but the diagnoses themselves are unsupported by the

9

record. As the ALJ noted, EMG testing was negative, and the record does not include findings for at least eleven positive tender points on physical examination or evidence that other disorders that could cause the related symptoms and signs were excluded (A.R. 27). On these bases, the ALJ found that carpal tunnel syndrome and fibromyalgia were not medically determinable impairments (A.R. 27). Where the record is insufficient to establish that Plaintiff has carpal tunnel syndrome or fibromyalgia, Plaintiff cannot rely on these diagnoses as evidence of associated functional limitations.

Plaintiff's last effort to obtain reversal is to argue that the ALJ erroneously relied on "reported normalcy and stability" in discounting Dr. Jobbins' opinion (Dkt. No. 20 at 15). Specifically, Plaintiff claims that "[t]he reports that [Plaintiff's] physical health condition has been normal does not suggest that the condition itself has been good. Rather it suggests that her condition has not changed" (Dkt. No. 20 at 15). Plaintiff's argument is unpersuasive. Normal physical examination findings, such as those on which the ALJ relied in the instant case, are evidence that a claimant's condition is free from impairment. Indeed, a physical or mental impairment can only be established by "anatomical, physiological, or psychological *abnormalities* that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921 (emphasis added). Thus, it was not improper for the ALJ to discount Dr. Jobbins' opinion regarding Plaintiff's functional limitations where that opinion was contradicted by physical examinations showing "normal motor strength, motion, and sensation in [Plaintiff's] extremities, with normal dexterity, and a normal unassisted gait" (A.R. 36). Nothing in either of the two cases Plaintiff cites, *Morin v. Astrue*, Civil No. 10-cv-159-JL, 2011 WL 2200758 (D.N.H. June 6, 2011), and *Kohler v. Astrue*, 546 F.3d 260 (2d Cir. 2008), suggests otherwise. To the contrary, in *Morin*, the court found substantial record support for the ALJ's

conclusion that the functional assessment of one of the plaintiff's treating providers was inconsistent with his medical notes, which showed the plaintiff had a "normal gait," "normal coordination and gait," and "normal motor bulk and tone." *Id.*, 2011 WL 2200758, at *4-5. While *Morin* and *Kohler* could support an argument that an ALJ errs when she or he interprets the term "stable" as "good" because a claimant can be stable at a low functional level, the ALJ here did not rely on any purported stability in Plaintiff's condition in finding Dr. Jobbins' opinion to be unpersuasive. *See Morin*, 2011 WL 2200758, at *8 (explaining that because a claimant can be stable at a low functional level, "a conclusion that a patient is 'stable' must be evaluated for purposes of an RFC determination in the context of a patient's entire medical record."); *Kohler*, 546 F.3d at 268 (noting that the term "stable" might mean only that a claimant's condition has not changed, and "she could be stable at a low functional level"). Thus, Plaintiff's reliance on *Morin* and *Kohler* is unavailing, and there is no basis for remand on account of Plaintiff's challenge to the ALJ's evaluation of the opinion evidence.

V.   CONCLUSION

Based on the foregoing, Plaintiff's motion for judgment on the pleadings (Dkt. No. 19) is DENIED and the Commissioner's motion to affirm (Dkt. No. 22) is GRANTED.  The clerk is directed to close the case.

It is so ordered.

Date:  May 5, 2023                                          /s/ Katherine A. Robertson
                                                            KATHERINE A. ROBERTSON
                                                            U.S. MAGISTRATE JUDGE